UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

KIMBERLY A. GOMEZ and
JOSEPHINE O. SANCHEZ,

      Plaintiffs,

v.                                                                Civ. No. 11-386 MV/GBW

LAS CRUCES PUBLIC SCHOOLS and
DAVID DEL TORO,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: Defendant David Del Toro's Motion to Dismiss Plaintiffs' Breach of Contract Claims [Doc. 32]; Plaintiffs' 12(f) Motion to Strike Exhibits Attached to Defendant Del Toro's Memorandum in Support of Motion for Judgment on the Pleadings [Doc 35]; Defendant Las Cruces Public Schools; Motion to Dismiss and/or for Judgment on the Pleadings as to Count III of the Plaintiffs' First Amended Complaint, and to Dismiss Plaintiffs' Claims for Punitive Damages and Pre-judgment Interest Under Counts I and II [Doc. 46]; and Defendant Del Toro's Motion to Dismiss Plaintiff Gomez's 42 U.S.C. § 1983 Claims [Doc. 51].  The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that the Defendant Del Toro's motion to dismiss Plaintiffs' breach of contract claims is well-taken and will be GRANTED; Plaintiff's motion is DENIED AS MOOT; Defendant Las Cruces Public Schools' motion is well-taken and will be GRANTED; and Defendant David Del Toro's motion to dismiss Plaintiff Gomez's Section 1983 claims is well-taken in part and not well-taken in part and will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

In 2010, Plaintiffs Kimberly A. Gomez ("Gomez") and Josephine O. Sanchez ("Sanchez"), former faculty members at Oñate High School, filed this action for discrimination and retaliation against Las Cruces Public Schools ("LCPS") and David Del Toro ("Del Toro"), former Principal of Oñate High School. In their First Amended Complaint, Plaintiffs bring: (1) claims against both Defendants under the New Mexico Human Rights Act; (2) claims for breach of contract by both Defendants; and (3) claims under 42 U.S.C. Section 1983 against Del Toro, alleging that he violated their constitutional "rights of freedom of speech, or their rights to equal protection of the laws." *See* Doc. 1-2. Previously, Del Toro filed a motion to dismiss, on the basis of qualified immunity, Sanchez's 1983 claim, to the extent she alleges a violation of her First Amendment rights. *See* Doc. 48. In a Memorandum Opinion and Order entered on March 9, 2012, the Court granted the motion, dismissing Sanchez's claim that Del Toro is liable pursuant to Section 1983 for violating her First Amendment rights. *See* Doc. [60]. Plaintiff's Section 1983 claim alleging that Del Toro violated Sanchez's equal protection rights remains viable. *Id.*

Del Toro now brings two additional motions to dismiss. First, Del Toro moves to dismiss Plaintiffs' breach of contract claims against him, arguing that there is no contract, express or implied, between Del Toro and Plaintiffs. Plaintiffs oppose this motion. Del Toro also moves to dismiss Gomez's Section 1983 claims, arguing that: (1) Plaintiffs failed to properly allege that Del Toro was acting under color of state law; (2) Plaintiffs failed to state facts showing that Gomez engaged in "protected speech", and thus failed to allege a violation of her First Amendment rights ; and (3) Plaintiffs failed to state facts showing that Gomez is a member of a protected class, and thus failed to allege a violation of her equal protection rights.

Plaintiffs have conceded that they fail to state a claim for violation of Gomez's equal protection rights, and thus agree to dismissal of that claim.  Plaintiffs, however, oppose Del Toro's motion to dismiss Gomez's Section 1983 claim to the extent they allege a violation of Gomez's First Amendment rights.

Defendant LCPS also moves to dismiss Plaintiff's Section 1983 claim against it, and Plaintiffs' claims against it for punitive damages and prejudgment interest, brought in connection with their New Mexico Human Rights Act and breach of contract claims.  In their response to LCPS's motion, Plaintiffs state that they never intended to plead a Section 1983 claim against LCPS, and thus agree to dismissal of that claim.  Further, Plaintiffs concede that punitive damages are not available from LCPS, and agree to dismissal of their claims against LCPS for punitive damages.  Plaintiffs, however, argue that they are entitled to prejudgment interest from LCPS on their New Mexico Human Rights Act and breach of contract claims.

Finally, Plaintiffs move to strike the exhibits attached in support of Del Toro's motion to dismiss Plaintiffs' breach of contract claim.  As more fully set forth herein, the Court did not rely on those exhibits in reaching its decision and, accordingly, Plaintiffs' motion is moot.

## LEGAL STANDARD

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  When considering a 12(b)(6) motion, the Court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130

S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Accordingly, while the Court must take all of the factual allegations in the complaint as true, "a plaintiff armed with nothing more than conclusions" cannot survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1950.

## DISCUSSION

I.      Del Toro's Motion to Dismiss Gomez's First Amendment Claim

Plaintiffs allege that "Plaintiff Gomez was employed at Oñate High School as the school counselor." Doc. 1-2, ¶ 7. Further, Plaintiffs allege that "[a]lthough not normally in her capacity as counselor, Plaintiff Gomez and other counselors were occasionally approached by staff or students relating to a wide variety of concerns, personal and, in some instances, professional, in addition to the ordinary job duties of the position." *Id.* According to Plaintiffs, "[i]n the fall semester of the 2008-2009 school year, Plaintiff [Gomez] was approached by two faculty or staff members and each related different, but similar, patterns of conduct on the part of Defendant Del Toro." *Id.* at ¶ 11. Specifically, both Sanchez, and another individual, Marissa Zamora, related a pattern of sexual harassment by Del Toro. *Id.* Upon receiving these reports, Gomez "assisted these employees by participating in meetings with management regarding [their] complaints, preparing written reports (or reviewing them if prepared by others) and by

advocating for a sex and retaliation free workplace." *Id.* at ¶ 31.

Plaintiffs allege that, in retaliation for Gomez's actions, Del Toro ordered Gomez and her department "to work on a wide variety of additional projects over the summer break, and were offered no additional funds to compensate them for this uncontracted-for labor." *Id.* at ¶ 33. Gomez and others filed a written complaint regarding harassment by Del Toro. *Id.* at ¶ 34. Thereafter, Del Toro singled her out "for repeated attacks, including "visible, barely-controlled fury, derogatory tones of voice, demeaning facial expressions, personal insults, and defamatory comments to other faculty, staff and students regarding [Plaintiff] Gomez." *Id.* at ¶ 36. Del Toro decided to take over the counseling department, slammed doors, pounded on closed doors, and required staff to explain what their coworkers were doing. *Id.* at ¶ 39. He "malign[ed] the character of Plaintiff Gomez to such a degree that she no longer shared the position of trust and confidence that a counselor must, and to such a degree that her workplace performance was hindered." *Id.* According to Plaintiffs, he "created an extraordinarily hostile work environment, in large part, in retaliation for faculty and staff having lodged complaints against him." *Id.* at ¶ 40. Ultimately, "Gomez was removed as school counselor by Defendant Del Toro . . . [which] worked to demote [her] to a lesser position, with reduced prestige and responsibility." *Id.* at ¶ 8.

Del Toro argues that these allegations are insufficient to state a Section 1983 claim for violation of Gomez's First Amendment rights, first because Plaintiffs fail to allege that Del Toro acted under color of law, as required by Section 1983, and second because Plaintiffs fail to meet the five-prong test established by the Supreme Court to determine whether a public employee's interests "in commenting on matters of public concern" outweigh "the employer's interests in promoting the efficiency of the public services it performs though its employees." *Leverington v. City of Colorado Springs*, 643 F.3d 717, 723 (10th Cir. 2011) (citation omitted).

A.      Color of State Law

Under 42 U.S.C. Section 1983, "[e]very person who, under color of [state law]. . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.SC. § 1983. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer was clothed with the authority of that law." *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1305 (10th Cir. 2001). Here, Plaintiffs allege that Del Toro was the Principal of Oñate High School, "placed with general management authority over the staff and faculty." Doc. 1-2, ¶ 4.

Plaintiffs fail to specifically allege that Del Toro was acting in his official capacity. In fact, the First Amended Complaint appears to contain a typographical error, as it states "At all times relevant, Defendant Del Toro's conduct was in his individual or personal capacity, and not conducted in a personal capacity." ¶ 67. Nonetheless, it is clear from the relevant substantive allegations in the First Amended Complaint that Plaintiffs allege that Del Toro was acting in his capacity as Principal when he engaged in retaliatory conduct against Gomez. Viewing all reasonable inferences in favor of Plaintiffs and construing the First Amended Complaint liberally, as is required, *see Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002), the Court finds that Plaintiffs have sufficiently alleged facts that, if proven, would establish that Del Toro was acting within his official capacity as Principal of a public school, and therefore under color of state law. *See Linder v. City of New York*, 263 F. Supp. 2d 585, 593 (E.D.N.Y. 2003).

B.  Protected Speech

"[A] public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers*, 461 U.S. 138, 140 (1983). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 419 (2006). The interest of public employees in commenting on matters of public concern, however, "must be balanced with the employer's interests 'in promoting the efficiency of the public services it performs through its employees.'" *Leverington*, 643 F.3d at 723 (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)).

In *Pickering*, the Supreme Court "sought to achieve this balance through the adoption of a four-part test to be implemented in public-employee, free-speech cases." *Leverington*, 643 F.3d at 724. In *Garcetti*, the Supreme Court "expanded on the *Pickering* test by adding a fifth, threshold inquiry that seeks to determine whether the speech at issue was made pursuant to the public employee's official duties." *Id.* "Thus, after *Garcetti*, it is apparent that the '*Pickering*' analysis of freedom of speech retaliation claims is a five step inquiry which we now refer to as the '*Garcetti/Pickering*' analysis." *Id.* (citation omitted).

The *Garcetti/Pickering* test includes the following inquiries:

(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as an employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Id.* (citation omitted). The first three inquiries "are to be resolved by the district court, while the last two are ordinarily for the trier of fact." *Brammer-Hoelter v. Twin Peaks Charter Academy*,

492 F.3d 1192, 1201 (10th Cir. 2007).  Here, Del Toro argues that Gomez's allegations, if proven, would be insufficient to show that her speech was made pursuant to her official duties, that her speech was on a matter of public concern, or that her speech was a motivating factor in adverse employment actions taken against her.  Accordingly, Del Toro contends, Gomez's First Amendment claim fails as a matter of law under the first, second and fourth inquiry of the *Garcetti/Pickering* test.  As set forth herein, none of Del Toro's arguments is availing.

        1.        <u>Speech Pursuant to Official Duties</u>

"[S]peech relating to tasks within an employee's uncontested employment responsibilities is not protected from regulation."  *Id.* at 1203.  Speech that is "generally consistent with the type of activities [the employee] was paid to do" is made pursuant to official duties.  *Id.*  An employee's official job description is not dispositive.  Rather, "[t]he ultimate question is whether the employee speaks as a citizen or instead as a government employee – an individual acting in his or her professional capacity."  *Id.* (citation omitted).  Thus, "if an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties."  *Id.*  On the other hand, "not all speech that occurs at work is made pursuant to an employee's official duties," and not "all speech about the subject matter of an employee's work [is] necessarily made pursuant to the employee's official duties."  *Id.* at 1204.  Instead, the court "must take a practical view of all of the facts and the employment relationship."  *Id.*

Here, Plaintiffs allege that Gomez's speech at issue – meetings with management, written reports and advocacy efforts all aimed at eradicating sexual harassment – arose out of contact initiated by other staff members, which contact was "not normally in her capacity as counselor,"

but rather was "in addition to the ordinary job duties of [her] position." Doc. 102, ¶ 7. Despite these allegations, Del Toro argues that the facts as pled show that Gomez herself considered her counseling of other staff on matters regarding sexual abuse to be within her official duties, and accordingly, Gomez's speech was made pursuant to her job duties as counselor. Del Toro points to no specific allegations in the First Amended Complaint to support this argument, and the Court has found none. Indeed, Del Toro's argument appears to be at odds with the clear allegations in the First Amended Complaint. On a motion to dismiss, the Court must take all well-pled factual allegations as true. Taking "a practical view" of the facts alleged, the Court finds that Plaintiffs sufficiently allege that Gomez was speaking as a citizen, rather than acting in her professional capacity as school counselor, when she engaged in speech regarding sexual harassment of other staff members. Accordingly, there is sufficient factual content in the First Amended Complaint for the Court to draw the reasonable inference that Gomez was not acting pursuant to her official duties when she engaged in the speech at issue here.

2. Matters of Public Concern

"Matters of public concern are those of interest to the community, whether for social, political, or other reasons." *Brammer-Hoelter*, 492 F.3d at 1205. Speech that simply airs grievances of a purely personal nature typically does not involve matters of public concern." *Id.* (citation omitted). Conversely, "[s]peech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of [public] officials, in terms of content, clearly concerns matters of public import." *Worley v. Bd of County Comm'rs of Park County*, 44 F. App'x 892, 895 (10th Cir. 2002). In deciding what is a matter of public concern, the court "is required to consider the content, form, and context of a given statement, as revealed by the whole record." *Brammer-Hoelter*, 492 F.3d at 1205 (citation omitted).

9

"Allegations of sexual harassment have been found to involve matters of public concern." *Wulf v. City of Wichita*, 883 F.2d 842, 860 (10th Cir. 1989) (finding that letter alleging sexual harassment of another police officer was speech on matter of public concern); *see also Worley*, 44 F. App'x at 895 (plaintiff's speech was on matter of public concern where she alleged that she had observed discriminatory and harassing behavior directed towards women, and that she had periodically raised the subject and helped arrange for sexual harassment training); *Wren v. Spurlock*, 798 F.2d 1313 (10th Cir. 1986) (letter written by group of teachers including several complaints of sexual harassment of students and teachers constituted speech on matter of public concern). This is particularly true where "the allegations touch not solely on the complainant's own employment conditions, but also involve the harassment of other workers." *Nieto v. Kapoor*, 61 F. Supp. 2d 1177, 1189 (D.N.M. 1999), *aff'd*, 268 F.3d 1208 (10th Cir. 2001).

Here, Gomez's speech involved reporting sexual harassment of two other staff members, and advocating against sexual harassment in the school. Del Toro argues that Gomez was simply airing a personal grievance by her speech, and calls into question the validity of Plaintiffs' allegations based on the timeline of alleged events. The First Amended Complaint, however, clearly alleges that Gomez's speech pertained to sexual harassment by Del Toro, the school Principal, of individuals other than herself, and thus cannot be described as the airing of a personal grievance. To the contrary, if proven, Plaintiffs' allegations would establish that Gomez's speech disclosed evidence of impropriety on the part of a public official, and thus concerned matters of public import. Further, the Court finds nothing irregular in the timeline of alleged events, as Sanchez and Zamora allegedly first reported Del Toro's harassment of them to Gomez in the fall of 2008, and the retaliation by Del Toro allegedly occurred in the spring and

summer of 2009. *See* Doc. 1-2, ¶¶ 27, 33. Accordingly, there is sufficient factual content in the First Amended Complaint for the Court to draw the reasonable inference that Gomez was speaking on a matter of public concern when she engaged in the speech at issue here.

### 3. Substantial Factor in Motivating An Adverse Employment Action

Because First Amendment retaliation claims do not depend on a property interest in continued employment, "actions short of an actual or constructive employment decision can in certain circumstances violate the First Amendment." *Brammer-Hoelter*, 492 F.3d at 1207. The Tenth Circuit has "implied that substantial harassment and abuse could be a sufficient adverse employment action for First Amendment purposes." *Id.* at 1208. Further, "First Amendment retaliation claims can be based on removing job duties from an employee's portfolio or giving an employee a written reprimand or a poor performance rating." *Id.*

In this case, the First Amended Complaint adequately alleges that Del Toro took adverse employment action against Gomez as a result of her speech. Specifically, Plaintiffs allege that, in retaliation for Gomez's participation in reporting and advocating against sexual harassment, Del Toro added unreasonably to her workload, singled her out for verbal attacks, took control of her department away from her, and ultimately removed her as school counselor, thereby demoting her. *See* Doc 1-2, ¶¶ 33, 36, 37, 8. Del Toro argues that these allegations are insufficient, as Gomez maintained employment at Oñate High School. This argument is unavailing, as Tenth Circuit law is clear that an employee need not have been terminated in order to bring a First Amendment retaliation claim. Del Toro also argues that the timeline of alleged events does not support Gomez's claim of retaliation. The First Amended Complaint, however, clearly alleges that after Gomez engaged in certain speech, Del Toro took retaliatory actions against her. Accordingly, there is sufficient factual content in the First Amended Complaint for

11

the Court to draw the reasonable inference that Del Toro retaliated against Gomez for engaging in the speech at issue here.

II.     Del Toro's Motion to Dismiss Plaintiffs' Breach of Contract Claim

Plaintiffs allege that LCPS "had in place a policy which prohibited sexual harassment in the workplace," that this policy applied to Del Toro, and that Del Toro "breached these provisions by his conduct directed to Plaintiff Sanchez." Doc. 1-2, ¶¶ 58, 59. Plaintiffs further allege that Del Toro repeatedly violated LCPS "ethical conduct" policies and procedures that prohibited unfair or improper conduct, sexual harassment of any school employee, making false or derogatory comments about colleagues, or creating an intimidating, hostile, or offensive work/school environment. *Id.* at ¶¶ 60-61. Finally, Plaintiffs allege that LCPS had in place a policy explicitly prohibiting retaliation or retribution against any employee who reported an incident regarding a violation of LCPS policy, that "Plaintiffs suffered such retribution," and that Del Toro "explicitly violated the contract in place between Plaintiff[s] and Defendants." *Id.* at ¶ 62.

In his motion to dismiss, Del Toro contends that these allegations are insufficient to state a claim for breach of contract, as they fail to establish the existence of a valid and enforceable contract between Plaintiffs and Del Toro. While Del Toro suggests that the policies and procedures referenced in the First Amended Complaint gave rise to an implied contract between Plaintiffs and LCPS, Del Toro argues that no such implied contract existed between Plaintiffs and Del Toro himself. In response, Plaintiffs argue that LCPS policies and procedures constituted contracts between LCPS and Del Toro, that Del Toro breached those contracts, and that, because they were members of the class of intended beneficiaries of those policies, Plaintiffs are entitled to sue Del Toro for his breach.

12

Del Toro is correct that Plaintiffs have failed to allege the existence of a contract between Plaintiffs and Del Toro. While the First Amended Complaint contains the conclusory allegation that Del Toro "explicitly violated the contract in place between Plaintiff[s] and Defendants," *id.*, there are no factual allegations in the First Amended Complaint to establish, in the first instance, the existence of any such contract. Indeed, Plaintiffs appear to acknowledge this in their response to Del Toro's motion, as they now take the approach that their breach of contract claim is based instead on contracts between LCPS and Defendants to which, Plaintiffs contend, they were intended third party beneficiaries.

"It is a general rule of law that one who is not a party to a contract cannot maintain suit upon it." *Fleet Mort. Corp. v. Schuster*, 811 P.2d 81, 82 (N.M. 1991). A third party, however, may be a beneficiary of such contract, and as such, may have an enforceable right against a party to a contract. *Id.* Whether an individual is a third party beneficiary depends on whether the parties to the contract intended to benefit the third party. *Id.* at 82-82. "Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary." *Id.* at 83 (citation omitted); *see also FDIC v. Frankel*, No. 11-CV-3279, 2011 WL 5975262, *4 (N.D. Cal. Nov. 29, 2011) ("Whether a third party is an intended, rather than merely incidental, beneficiary is determined by the parties' intent, which the Court must glean from reading the contract as a whole in light of the circumstances under which it was entered."). Without evidence of such intent, an individual who happens to derive a benefit from the performance of a contract is merely an "incidental beneficiary", with no right to enforce the contract. *Schuster*, 811 P.2d at 83.

Generally, it is a question of fact whether a particular third person is an intended, or merely an incidental, beneficiary of a contract. *Frankel*, 2011 WL 5975262, at *4; *Debary v.

13

*Harrah's Oper. Co.*, 465 F. Supp. 2d 250, 261 (S.D.N.Y. 2006) ("Third party beneficiary status is a question of fact, because the issue turns on whether the contracting parties intended their contract to directly benefit a third party."), *aff'd*, 547 F.3d 115 (2d Cir. 2008). Here, however, there are no facts alleged in the First Amended Complaint that, if proven, would establish that Plaintiffs are members of a class for whose benefit any implied contracts between Del Toro and LCPS were created. Specifically, Plaintiffs do not allege that by creating the policies excerpted in the First Amended Complaint, Del Toro and LCPS intended to benefit Plaintiffs. Further, Plaintiffs fail to point to any provisions in the LCPS policies themselves, or any other extrinsic evidence, that demonstrate such intent. Indeed, the first time Plaintiffs even suggest that they are third party beneficiaries of implied contracts between Del Toro and LCPS is in their response to Del Toro's motion to dismiss. Accordingly, the First Amended Complaint does not contain sufficient factual matter, accepted as true, to state a third party beneficiary claim that is plausible on its face. *Ashcroft*, 129 S. Ct. at 1949. Because the factual content of the First Amended Complaint does not allow this Court to draw the reasonable inference that Del Toro is liable to Plaintiffs, as third party beneficiaries, for his breach of LCPS policies, Plaintiffs' breach of contract claim cannot survive a motion to dismiss. *Id.*

III.     LCPS's Motion to Dismiss Plaintiffs' Request for Prejudgment Interest

Plaintiffs' request for relief, set forth in the last paragraph of the First Amended Complaint, includes a request for an award of prejudgment interest. Plaintiffs have alleged two claims against LCPS, namely, their New Mexico Human Rights Act claim and their breach of contract claim. LCPS argues that because it is a state agency, the Court may not award prejudgment interest on any judgment rendered against it on either or both of these claims. The Court agrees.

NMSA 1978, Section 56-8-4, is the general statute authorizing awards of interest in civil cases, such as the case here. This provision gives the court discretion to allow interest of up to ten percent from the date the complaint is served upon the defendant, if certain conditions are met. NMSA 1978, § 56-8-4(B). However, this provision expressly exempts the state and its political subdivisions from awards of interest on judgments, including prejudgment interest, unless otherwise specifically provided by statute or common law. NMSA 1978, § 56-8-4(D). Here, Plaintiffs have cited no statute or common law exception to support their position that they are entitled to prejudgment interest from LCPS. Accordingly, under the clear language of Section 56-8-4(D), Plaintiffs are not entitled to recover prejudgment interest from LCPS.

IV.     Plaintiffs' Motion to Strike

Plaintiffs move to strike certain documents filed by Del Toro in support of his motion to dismiss their breach of contract claim against him. Specifically, Plaintiffs ask the Court to strike the employment contracts between Gomez and LCPS, and between Sanchez and LCPS, for the 2007-2008, 2008-2009, and 2009-2010 school years, and the affidavit of Karen Robles, Chief of Staff of LCPS, authenticating those contracts. In support of their motion, Plaintiffs contend that these exhibits are immaterial, as they are not the contracts upon which Plaintiffs' breach of contract claim is based.

In deciding Del Toro's motion to dismiss Plaintiffs' breach of contract claim, the Court did not reference or rely upon any of the three documents that Plaintiffs seek to strike. Accordingly, the Court will deny as moot Plaintiffs' motion to strike, without prejudice to renewal before trial as a motion *in limine*. *See Ortiz v. San Miguel County*, 955 F. Supp. 1338, 1347 (D.N.M. 1996).

**CONCLUSION**

Plaintiffs have adequately alleged a Section 1983 claim against Del Toro for violation of Gomez's First Amendment rights, but have not adequately alleged a Section 1983 claim against Del Toro for violation of Gomez's equal protection rights. Plaintiffs have failed to adequately allege a breach of contract claim against Del Toro. Plaintiffs have not alleged a Section 1983 claim against LCPS, and are not entitled to recover punitive damages or prejudgment interest from LCPS. The Court did not rely on any of the documents that Plaintiff seeks to strike, and accordingly, Plaintiffs' motion to strike is moot.

**IT IS THEREFORE ORDERED** that Defendant David Del Toro's Motion to Dismiss Plaintiffs' Breach of Contract Claims [Doc. 32] is **GRANTED**;

**IT IS THEREFORE FURTHER ORDERED** that Plaintiffs' 12(f) Motion to Strike Exhibits Attached to Defendant Del Toro's Memorandum in Support of Motion for Judgment on the Pleadings [Doc 35] is **DENIED AS MOOT**;

**IT IS THEREFORE FURTHER ORDERED** that Defendant Las Cruces Public Schools' Motion to Dismiss and/or for Judgment on the Pleadings as to Count III of the Plaintiffs' First Amended Complaint, and to Dismiss Plaintiffs' Claims for Punitive Damages and Pre-judgment Interest Under Counts I and II [Doc. 46] is **GRANTED**; and

**IT IS THEREFORE FURTHER ORDERED** that Defendant Del Toro's Motion to Dismiss Plaintiff Gomez's 42 U.S.C. § 1983 Claims [Doc. 51] is **GRANTED IN PART AND DENIED IN PART**, as follows: Plaintiffs' claim that Del Toro violated Gomez's equal protection rights is dismissed; Plaintiffs' claim that Del Toro violated Gomez's First Amendment Rights is not dismissed and remains viable.

DATED this 19th day of September, 2012.

_____
MARTHA VÁZQUEZ
United States District Court Judge